UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE KINSEY and SOPHIA BERNAL, a minor,
by her Next Friend, FERNANDO BERNAL,

      Plaintiffs,

                              Hon. District Judge Judith E. Levy
                              Magistrate Judge Elizabeth A. Stafford
                              Civil Action No. 15-cv-11752

SANDOZ, INC. and MEIJER, INC.,

      Defendants.

_____/

ROBERT C. DOMOL P12854             JILL M. WHEATON P49921
ALAN WITTENBERG P49788           ALISON CARRUTHERS P77745
Attorneys for Plaintiffs               Attorneys for Defendants
3000 Town Center, Suite 1250        2723 South State Street #400
Southfield, MI 48075                Ann Arbor, MI 48104
(248) 353-1000                       (734) 214-7660

_____/

## PLAINTIFFS' ANSWER TO DEFENDANT SANDOZ'S MOTION TO DISMISS

## PLAINTIFFS' ANSWER TO DEFENDANT SANDOZ'S
## MOTION TO DISMISS

NOW COME the plaintiffs herein, NICOLE KINSEY and SOPHIA BERNAL, a minor by her Next Friend, FERNANDO BERNAL, by and through their attorneys, and in answer to defendant's Motion to Dismiss, state as follows:

1.    The plaintiffs admit that this is an action brought by the plaintiffs, Nicole Kinsey (Kinsey) and Sophia Bernal, by her Next Friend, Fernando Bernal (SB) (collectively plaintiffs), against the defendant Sandoz, Inc. and Meijer, Inc. (collectively defendants). The plaintiffs' allegations are contained in the Complaint, which include negligence and gross negligence; and breach of express and implied warranties.

2.    Plaintiff denies and further states that claims for "wrongful conception" are not prohibited by Michigan law. (See *Cichewicz v Salesin*, 306 Mich App 14 (2014)). Further, claims for "wrongful life" and "wrongful birth" are not prohibited by Michigan law if the plaintiffs can prove that the defendants were grossly negligent. *Cichewicz, supra*. Further, plaintiffs have properly pled claims for breach of express and implied warranties. Therefore, the reasons set forth herein, the defendant Sandoz's request that this court dismiss all claims asserted against Sandoz in the plaintiff Complaint should be denied.

## <u>ISSUES PRESENTED</u>

1.      Does Michigan law recognize an ordinary negligence claim for "wrongful conception"?

ANSWER:     Yes.

2.      Does Michigan law recognize a claim for "wrongful life" and "wrongful birth" if the defendant is grossly negligent?

ANSWER:     Yes.

3.      Have the plaintiffs adequately pled claims against Sandoz for breach of warranty?

ANSWER:     YES.

## <u>CONTROLLING AUTHORITY</u>

Plaintiffs herein rely upon Federal Rules of Civil Procedure 8, 9 and 12(b)(6) and the authorities and case law cited herein.

## TABLE OF CONTENTS

**Page**

PLAINTIFFS' ANSWER TO DEFENDANT SANDOZ, INC'S
MOTION TO DISMISS ……………………………………………………………………i

PLAINTIFFS' BRIEF IN SUPPORT OF PLAINTIFFS' ANSWER
TO DEFENDANT'S MOTION TO DISMISS ……………………………………………1

I.  INTRODUCTION ……………………………………………………………………1

II.  FACTUAL BACKGROUND ………………………………………………………..1

III.  LEGAL STANDARD ………………………………………………………………5

IV.  LEGAL ARGUMENT ……………………………………………………… ..5

V.  AMENDING THE COMPLAINT …………………………………………………13

VI.  CONCLUSION ……………………………………………………………………14

EXHIBITS

      A)     Complaint;
      B)     Press Release from Defendant Sandoz;
      C)     Case Law.

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**                                                          **Page(s)**

*Automotive Components Holdings v Konal Engineering*
(US District Court, Eastern District, Michigan 2012) .............................12

*Bell Atlantic Corp v Twombly*, 550 US 544 at 570 ...................................5

*Bennett v MIS Corp.*, 607 F. 3rd 1076, 1091 (6th Cir. 2010) ........................5

*Bishop v Lucent Techs. Inc.*, 520 F. 3rd 516, 519 .....................................5
(6th Cir. 2008)

*Cichewicz v Salesin*, 306 Mich App 14 (2014)..................................1,6

*Crawlwell v Verspeden*, 2012 Westlaw 3307383 (2012) ...........................8

*Deward v Chariot Cable Co.*, 331 Mich 576 (1951) ...............................12

*Dow Corning Corporation v Weathershield Manufacturing*,
790 F. Supp. 2nd 604 (2011) .......................................................12

*Foman v Davis*, 371 US 178, 182 (1982) .............................................13

*Ickes v. Nexcare Health Systems*, (US District Court, Eastern District
Michigan, Southern Division, 2015) ....................................................13

*Janikowski v Bendix Corp.*, 823 F. 2nd 945, 951 (6th Cir. 1987) ...................13

*Jetts v Stewart Building Corporation*, 210 West Law 2384931
(Michigan Court of Appeals, 2012).....................................................12

*Kraft v Dr. Leonard's Health Corporation*, 646 F. Supp. 2nd 882, 890
(Eastern District Michigan 2009) .....................................................10

*Overstreet v Norden Laboratories*, 669 F 2nd 286, 290 (6th Cir. 1982) ...........10

*Pack v Daman Corp.*, 434 F. 3rd 810, 814 (6th Cir. 2014) ...........................12

*Price Brothers v Philadelphia Gear Corp.*, 49 F 2nd 416, 422 (6th Cir. 1991) ....10

*Renard v. Biczak, 441 NW 2d 441 (1989)* .........................................6

*Rouse v Wesley*, 494 NW 2nd 7 (1992) …………………………………………………7

*Salzman v Maldaver*, 24 NW 2nd 161 (1946) …………………………………10

*VandenBusch v Bayer Healthcare Pharmacy, Inc.*, 2014
US Dist. Lexis 48055, pgs. 45-47 …………………………………………...11

MCLA 400.2313 ……………………………………………………………………10

MCLA 600.2945(D) …………………………………………………………………9

MCLA 600.2971…………………………………………………………………5,6, 7

## PLAINTIFFS' BRIEF IN SUPPORT OF ANSWER
## TO DEFENDANT'S MOTION TO DISMISS

### I. INTRODUCTION

This is a civil action that was originally brought in the Circuit Court of Wayne County, Michigan, by the plaintiff Nicole Kinsey (Kinsey) and Sophia Bernal by her Next Friend Fernando Bernal (SB) (collectively plaintiffs), against the defendants Sandoz, Inc. (Sandoz) and Meijer, Inc. (Meijer) (collectively defendants). This case was removed to this court pursuant to Sandoz's Notice of Removal on May 15, 2015. The plaintiffs have asserted claims for negligence and gross negligence and breach of warranty against all the defendants.

Michigan law is absolutely clear that, pursuant to Michigan statute and case law, there is a viable claim for wrongful conception under ordinary negligence theories. (See *Cichewicz, supra*, MCL 600.2971.) Further, under Michigan statutory law and case law, there are viable claims for "wrongful life" and "wrongful birth" against the defendant if the defendant is grossly negligent. (See *Cichewicz.*) Further, under Michigan statutory and case law, if the defendant is grossly negligent, it expands the amount of damages allowable for a wrongful conception claim. (See *Chichowicz* and MCL 600.2971(3)(4).)

### II. FACTUAL BACKGROUND

### A. PLAINTIFF MOTHER BACKGROUND

In 2013, the plaintiff mother (Kinsey), was 39 years old and gainfully employed as a respiratory therapist at a local hospital near Grand Rapids, Michigan. The plaintiff Kinsey purchased oral contraceptives, namely, Introvale, which was manufactured and packaged by the defendant Sandoz and distributed by the defendant Meijer. The Introvale purchased by the plaintiff Kinsey was supposed to be packaged in a 13 week blister package with weeks 1-12

being the active tablets and week 13 was to contain inactive placebos. That unbeknownst to the plaintiff mother, the Introvale package she purchased in 2013 was not manufactured and packaged properly. More specifically, the inactive placebo pills were wrongly placed in week 9 of the blister package. The packaging of the Introvale in this fashion was not FDA approved when it left the defendant Sandoz, who was the manufacturer.

In late May of 2013, the plaintiff mother began taking the subject Introvale medication that was manufactured and packaged by the defendant Sandoz and distributed by the defendant Meijer. The plaintiff took the medication per the directions contained in the Introvale package. Specifically, the plaintiff was directed by the defendant Sandoz to take 1 pill a day from weeks 1 – 13, in the specific order that the pills were placed within the blister pack.

The plaintiff mother received a letter in August of 2013 from the defendant Meijer, who distributed the defectively packaged Introvale. In the letter it indicated that there was a "Class 1 drug recall of this medication" (Introvale) and due to the defect, it may cause an unintended pregnancy. The plaintiff mother unfortunately became pregnant while taking the wrongly placed placebo before receiving the letter.

It should be noted that the plaintiff mother was 39 years old when she became pregnant. Plaintiff mother was divorced. In her previous marriage, she had 4 children. By choice, plaintiff mother had not been pregnant for over 12 years. All 4 of her previous pregnancies involved serious complications and plaintiff mother was deemed a high risk patient. As a result, the plaintiff mother wanted no more pregnancies for her safety and the safety of the child. The risk was simply too high that life altering complications could result. The plaintiff mother was not trying to conceive a child. Instead, the plaintiff mother relied upon the oral contraceptives that

were manufactured and packaged by the defendant Sandoz and distributed by the defendant Meijer.

That upon learning that the plaintiff mother was pregnant, after the recall by the defendant, the plaintiff mother began treating with her OB/GYN.  That despite all reasonable efforts by her OB/GYN to supervise and maintain the plaintiff mother's health while she was pregnant, there were serious complications.  During a visit to her OB/GYN's office in January of 2014, her doctor immediately hospitalized the plaintiff mother because her blood pressure was too high and her OB/GYN and the other specialists were concerned that the plaintiff mother may have either a seizure, stroke or heart attack, and they wanted the baby delivered as quickly as possible, as the health of the mother and child were at risk.

On January 21, 2014, baby Sophia was born at approximately 24 weeks by emergency c-section at Helen DeVoss Children's Hospital in Grand Rapids.  Baby Sophia weighed only 1 pound 5 ounces.  The plaintiff mother had a long stay in the hospital while she recovered from the emergency surgery and the physical and emotional trauma of having delivered a baby under such dire circumstances.

The plaintiff baby Sophia continues to have numerous medical problems due to her premature birth.  The plaintiff baby Sophia was in the Neonatal Intensive Care Unit for nearly 6 months.  Following her discharge from the hospital, the plaintiff baby Sophia has had numerous hospitalizations due to medical problems which are being addressed by the appropriate specialists at University of Michigan Hospital and other institutions throughout the State of Michigan.

## B.  SECOND RECALL WITHIN 1 YEAR FOR SAME EXACT DEFECT

The defendant Sandoz recalled the same exact medication (Introvale) one year prior because of the same defective packaging.  More specifically, one year before this incident, the defendant Sandoz issued a national recall indicating that the medication Introvale was improperly packaged with placebo tablets mistakenly placed in the 9th row at opposed to the 13th row.  This is the **exact same mistake** that Sandoz made in the instant case.  Further, in its **first** recall in 2012, Sandoz issued a national recall because of the wrongly placed placebo tablets.  With that first national recall, Sandoz **alerted** the media and television.  The internet and newspapers published this national recall.  However, during the second recall in 2013, Sandoz did not alert the media and, as such, there was **no** media attention placed on this same exact recall.  Clearly, Sandoz was embarrassed by having to recall the same medication for the same exact reason at it did the year prior, or had found out that sale suffered as a result of the public notification in 2012.  Instead of finding out through the media, the plaintiff was informed of the recall by a letter sent by the defendant Meijer on August 13, 2013 that came too late.  If the defendant Sandoz had earlier announced to the media that there was a recall for this medication or notified plaintiff earlier by direct contact, the plaintiff mother would have known about the defective packaging earlier, which could have prevented the pregnancy.

## C.  EARLY STAGES OF DISCOVERY

It must be noted that we are in the extreme early stages of discovery.  We currently have interrogatories out to the defendants asking such questions as when did they realize that the medication was defectively packaged; how did they find out that the medication was defectively packaged; what system was in place as to alerting the public about this defective mediation; why

4

wasn't there national media attention to this recall, as was made 1 year prior to the exact same defect; etc.?

Further, there have been no depositions taken. Plaintiff has asked the defendants to provide the deposition of the person(s) most knowledgeable about recalls. Plaintiff wants to find out why the medication was packaged incorrectly; what measures were taken after the first recall to prevent this type of incident from occurring again; why the media wasn't alerted after the second recall, when the defendant knew or should have known about the defective packaging, etc.

## III.  LEGAL STANDARD

When evaluating the merits of a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court accepts the plaintiff's well pleaded allegations as being true and construes each of them in a light that is most favorable to him.  (See *Bennett v MIS Corp.*, 607 F. 3rd 1076, 1091, (6th Cir. 2010).)  A complaint must contain direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory.  See *Bishop v Lucent Techs, Inc.*, 520 F. 3rd 516, 519 (6th Cir. 2008).  Dismissal is only appropriate if the plaintiff has failed to offer sufficient factual allegations to make the asserted claim plausible on its face. See *Bell Atlantic Corp. v Twombly* at 550 US 544 at 570.

## IV.  LEGAL ARGUMENT

Plaintiffs' claims for negligence and gross negligence should not be dismissed.  The "wrongful life" and/or "wrongful conception" claims are permissible under Michigan law. The relevant Michigan statute, namely MLCA Section 600.2971 states as follows:

> (1)   A person shall not bring a civil action on a wrongful birth claim, that but for an act or omission of the defendant, a child or children would not or should not have been born:

5

(2)     A person shall not bring a civil action for damages on a wrongful life claim that, but for the negligent act or omission of the defendant, the person bringing the action would not or should not have been born;

(3)     A person shall not bring a civil action for damages for daily living, medical, educational or other expenses necessary to raise a child to the age of majority, on a wrongful pregnancy or wrongful conception claim that, but for an act or omission by the defendant, the child would not or should not have been conceived;

(4)     The prohibition stated in sub-section (1), (2), or (3) applies regardless of whether the child is born healthy or with a birth defect, or other adverse medical condition.  The prohibition stated in (1), (2), or (3) does not apply to a civil action for damages for an intentional or grossly negligent act or omission, including, but not limited to, an act or omission that violates the Michigan penal code . . .

See *Michigan Compiled Laws Section* 600.2971; see also *Cichewicz v Salesin*, 854 N.W. 2nd 901 (Michigan Court of Appeals 2014).

In *Cichewicz, supra*, the plaintiff brought a medical malpractice case against the defendant for wrongful birth and wrongful conception.  The Court of Appeals specifically stated:

Unlike wrongful birth and wrongful life claims, wrongful conception claims have consistently been permitted in Michigan; however, the types of damages recoverable in wrongful conception cases have been disputed.  See *Chichowicz* at pg. 905.  See also *Renard v Biczak*, 441 NW 2d 441 (1989).

In *Cichewicz*, the court interpreted MCL 600.2971 and stated:

Contrary to sub-section (1) and (2), which prohibits civil actions premised on wrongful birth and wrongful life claims, sub-section (3) does not prohibit civil actions premised on wrongful pregnancy or wrongful conception claims.  Rather, sub-section (3) prohibits a wrongful pregnancy or wrongful conception claim for "damage for daily living, medical, educational or other expenses necessary to raise a child to the age of majority".  But sub-section (4) provides for an exception to that is applicable to each prohibition statement sub-sections (1), (2), and (3). . . .

>Contrary to defendant's argument, MCL 600.2971 did not
>'create' a cause of action for wrongful conception. As discussed
>earlier, claims for wrongful conception have long been
>actionable in this state, although plaintiffs could not recover
>as damages "the customary cost of raising and educating a
>child".

>See *Rouse v Wesley*, 494 NW 2[nd] 7 (1992).

The court went on to state that there are actionable claims for wrongful birth and

wrongful life:

>We conclude that, through MCL 600.2971, the legislature
>has spoken in no uncertain terms, and those terms state that
>wrongful birth and wrongful life claims are actionable in
>Michigan 'for damages for an intentional or grossly negligent
>act or omission'. See MCL 600.2971(4). Further, wrongful
>conception claims remain actionable in Michigan and damages
>related to the cost of raising a child to the age of majority may
>be recovered on the showing of intentional or grossly negligent
>act or omission.

Clearly, Michigan courts have acknowledged that wrongful conception claims are viable

causes of action in Michigan. In the instant case, the plaintiff has properly pled numerous

breaches of duty as it relates to both Sandoz and Meijer. The plaintiff has alleged that the

defendant Sandoz had a duty to manufacturer and package the oral contraceptive, Introvale, in

such a manner that is reasonably safe for its intended users and packaged in such a manner that

was appropriate for its use. Further, plaintiff has alleged that Sandoz had a duty to distribute

pharmaceuticals and/or prescription products such as Introvale, that were manufactured and

packaged as approved by the Federal Drug Administration. Further, plaintiff has alleged that the

defendant Sandoz had a duty to notify the plaintiff that the supplied item was not fit to prevent

pregnancies as warranted. Further, plaintiff's Complaint clearly sets forth numerous breaches in

these duties, which include the fact that the defendants failed to comply with packaging standards

as approved by the FDA, namely, by placing inactive placebo pills in week 9 of the blister card, as opposed to week 13 of the blister card; failed to use due care and caution for the safety and protection of its foreseeable users by packaging the oral contraceptive improperly; failed to timely notify users, namely, the plaintiff mother, of the dangerous and improperly packaged product, so as to prevent any harm or danger to the plaintiff mother; failed to notify perspective users that the defendant had a history of not packaging its product in a fashion that would make the product useful for its intended purpose; and failed to notify the plaintiff in as urgent as a manner possible as to the uselessness of this system to prevent unwanted pregnancy and potential compromised life. (See also plaintiff's Complaint).

Additionally, the plaintiff has alleged that the defendant's actions amount to gross negligence. In *Crawlwell v Verspeden*, 2012 Westlaw 3307383 (2012), the court noted that a question of fact was raised by the plaintiff concerning its claim for gross negligence. This case involved a motor vehicle accident in a construction zone on I-94 expressway. The plaintiff alleged that the construction zone where the accident occurred was appropriately marked, signed and appropriate warnings were posted, but that the defendant failed to pay attention and failed to keep his vehicle under control, in spite of the many warnings and the knowledge, actual or imputed that vehicles ahead of him were slowing or stopped because of the construction zone. The defendants argued that plaintiff did not plead sufficient facts to state a claim for gross negligence or willful or wanton misconduct.

In *Crawlwell*, supra, the court denied the defendant's motion and indicated that:

> Taking plaintiff's allegations as true, it is plausible that (the defendants) actions amount to gross negligence or willful or wanton misconduct. Contrary to what defendants argue, the allegations amount to more than a moment of inattentiveness. The plaintiffs allege (defendant) failed to pay attention to the 'many' warnings and failed to control his vehicle, despite knowing of stopped cars

ahead of him.  A reasonable juror might conclude, especially in light of the fact that the (defendant) drove the vehicle at his job, that ignoring many construction signs and stopped cars on a highway would amount of a 'substantial lack of concern whether an injury results'.  See MCLA 600.2945(D) or 'such indifference to whether harm will result has to the equivalent of a willingness that it does'.

In the instant case, the defendant Sandoz recalled the exact same drug for the exact same problem just one year before the next recall in 2013, which is the subject of this lawsuit.  In the 2012 recall, there was national media attention.  If one searches the internet for Introvale recalls, the 2012 recall will be shown in numerous news media reports, magazines and newspapers. However the 2013 recall is extremely difficult to locate on any internet search engines.  The defendant clearly did not notify the medial of this recall.  The defendants obviously tried to keep this quiet.  Certainly not a show of concern for alerting users that may be affected.

It is plaintiffs' position that the defendant's actions of recalling the same exact drug for the same exact problem again within one year's time, amounts to gross negligence.  In 2012, the defendant recalled the same drug for placing the placebo pills in week 9 of the 13 week blister pack.  Clearly, the defendant didn't bother to correct this manufacturing/packaging defect that occurred and allowed the same mistake to happen again in 2013 and then deliberately withholding this fact from the media.  The plaintiff mother who was 39 years old and had a history of difficult pregnancies, did not want to become pregnant because of the dangers it posed to her and her baby.  However, because of the defendant's conduct, plaintiff mother became pregnant and she almost died.  Plaintiff mother was forced to give birth to the plaintiff baby Sophia at only 24 weeks and she weighed only 1 pound 5 ounces.  The baby Sophia spent the first 8 months of her life in the NICU at Helen DeVos Children's Hospital.  The plaintiff baby Sophia is now home, but suffers numerous serious medical problems.  The plaintiff maintains

that the defendant's actions clearly amount to a substantial lack of concern for whether an injury would result.

Further, plaintiff has alleged breach of express and implied warranties. The plaintiff's Complaint clearly states that the defendant expressly warranted that their product was appropriate and safe for its intended use which included, but not limited it to preventing unwanted pregnancies.

The Michigan Supreme Court has long implicitly recognized that an express warranty is no different than another other term of the contract. See *Salzman v Maldaver*, 24 NW 2nd 161 (1946). Michigan Compiled Laws, Section 400.2313 provides that express warranties are limited to statements, descriptions, representations, samples and models that are made part of the basis of the bargain. Nevertheless, the UCC does not require that express warranties be part of a written agreement of the parties and express warranties may be added by proof of oral warranties, as long as the writing itself is not a complete integration of the agreement. See *Price Brothers v Philadelphia Gear Corp.*, 49 F 2nd 416, 422, (6th Cir. 1991). The trier of fact must determine whether circumstances necessarily create an express warranty are present in any given case. See *Overstreet v Norden Laboratories*, 669 F 2nd 286, 290 (6th Cir. 1982). Under Michigan's version of the Uniform Commercial Code, advertisements and promotional literature can be part of the basis of the bargain and thus constitute express warranty when they are prepared and furnished by a seller to induce purchase of its products and the buyer relies on the representations. See *Kraft v Dr. Leonard's Health Corporation*, 646 F. Supp. 2nd 882, 890 (Eastern Dist. Michigan 2009).

Further, express warranty claims do not require privity of contract. If a manufacturer makes express warranty to the product's consumer, privity of contract is not necessary. See *VandenBusch v Bayer Healthcare Pharmacy, Inc.*, 2014 U.S. Dist. Lexis 48055, pages 45-47.

In the instant case, it is undisputed that Sandoz manufactured Introvale as a oral contraceptive. When Sandoz launched Introvale, it stated that Introvale is an oral contraceptive indicated for use by woman to prevent pregnancy. The whole purpose of why the plaintiff mother took Introvale was to prevent her from getting pregnant. The plaintiff mother, because of her age and her long history of having very traumatic and difficult pregnancies, was taking Introvale so that she would not become pregnant, which would endanger her health and the baby's health. Unfortunately, the defendant did not properly package the Introvale, which directly caused the plaintiff's pregnancy. In fact, the defendant has submitted under Exhibit A, a printout from the National Health Institute daily med website, which the defendant indicates the court may take judicial notice of. In the printout for Introvale, it specifically warns users of the medication that **"If you miss pills, you could get pregnant. This includes starting the pack late. The more pills you miss, the more likely you are to get pregnant."** Further, on page 25 of the insert, it advises the patient if you miss even "2 pills in a row, you could become pregnant if you have sex in the 7 days after you restart your pills, and another form of birth control should be used."

In the case at bar, the plaintiff mother took **7 placebo** pills (week 9) when she thought those pills were the **"active"** pills. The defendant expressly warranted that Introvale would prevent unwanted pregnancy if taken as directed. The defendant breached this express warranty by the defective packaging of the pills.

Further, the plaintiff has alleged implied warranty.  The purpose of the Doctrine of

Implied Warranty is to promote high standards in business and discourage sharp dealings.  See

*Dewade v Chariot Cable Co.*, 331 Mich 576 (1951).  The existence of an implied warranty of

fitness for a particular purpose is contingent on two general facts.  First, the seller must be aware

of the particular purpose for which the buyer intends to use the goods, and the buyer must rely on

the seller's skill or judgment to select or furnish goods suitable for that particular purpose.  See

*Dow Corning Corporation v Weathershield Manufacturing*, 790 F Supp. 2nd 604 (2011).

Further, plaintiff directs this court to *Jetts v Stewart Building Corporation*, 210, West

Law 2384931 (Michigan Court of Appeals, 2010).  In *Jetts*, the Michigan Court of Appeals

determined that plaintiff could bring a claim for breach of implied warranty against a brick maker

even though the bricks had passed through the hands, who used the bricks to make a structure for

the plaintiffs.  The court found that the fact that the plaintiffs lacked any privity of contract with

the brick maker is of no consequence since the claims involved a breached of implied warranty.

Similarly, in terms of express warranties, said warranties are not limited to the direct seller and

the Michigan Uniform Commercial Code does not indicate that a seller is limited to one who

directly sells goods to the consumer.  See *Pack v Daman Corp.*, 434 F. 3rd 810, 814 (6th Cir.

2014).  Thus, there is no particular requirement that an express warranty be limited to a direct

buyer.  See *Automotive Components Holding v Konal Engineering* (US District Court, Eastern

District Michigan, 2012).

In the instant case, the defendant clearly warranted that the purpose of this product was to

prevent pregnancy.  The defendant further warned that taking the pills out of order or missing

pills would increase the risk of the pregnancy and that other birth control should be used.  The

defendant warranted that its product was safe for its intended and expected use.  However, the

birth control pills were defective and unreasonably dangerous because of the defect in its packaging. Due to the defect in the packaging, the plaintiff unknowingly took placebo tablets which were placed in week 9 of the 13 week blister package. As such, she took inactive pills instead of taking the active pills, which did not prevent plaintiff from getting pregnant.

## V. AMENDING THE COMPLAINT

Finally, plaintiffs submits that their Complaint satisfies Federal Rule 12(b)(6), and contains sufficient direct and inferential allegations respecting the elements that sustain a recovery under viable legal theories. However, if this Honorable Court does not believe that plaintiff has satisfied Federal Rule 12(b)(6), the plaintiff respectfully requests this Honorable Court allow them to amend their Complaint. The 6th Circuit has emphasized "That the case law in this circuit manifests liberality in allowing amendments to Complaints." See *Janikowski v Bendix Corp.*, 823 F. 2nd 945, 951 (6th Cir. 1987). This is because the thrust of the provision is to reinforce the principal that cases should be tried on their merits, rather than on the technicalities of the pleadings. Se *Janikowski. supra.* See also *Ickes v Nexcare Health Systems*, US District Court, Eastern District Michigan, Southern Division, 2015).

Further, even though its within the discretion of the District Court, "in the absence of any apparent or declared reason, such as undue delay, bad faith . . . undue prejudice to the opposing party by virtue of allowance of the amendment . . . leave sought should, as the rule requires, be freely given." See *Foman v Davis*, 371 US 178, 182 (1982).

The instant case was recently filed in April 2015. Even before service of the Complaint, the defendants, on its own doing, found out about the filed Complaint and immediately removed the case from State Court to Federal Court. Even before filing an answer, the defendant responded by filing its Motion to Dismiss, pursuant to Federal Rule 12 (b)(6). While plaintiff

13

has sent out initial discovery requests, no discovery has really yet begun in this case. As such, if this court does not believe the Complaint satisfies Federal Rule 12(b)(6), the plaintiff should be allowed to amend their Complaint to satisfy Rule 12(b)(6). It would not cause any undue delay or undue prejudice to the defendant. Further, at this early stage, the plaintiffs are clearly not showing any bad faith.

## V. CONCLUSION

Therefore, plaintiff respectfully requests that this Honorable Court deny defendant's Motion to Dismiss, pursuant to Federal Rule 12(b)(6). However, if this Court is so inclined, the plaintiff respectfully asks that this Court allow them to amend their Complaint at this early stage of litigation to more thoroughly articulate its allegations of negligence, gross negligence, express and implied warranty.

WHERFORE, for the above stated reasons herein, the plaintiff respectfully requests this Honorable Court deny defendant's Motion to Dismiss; or, in the alternative, allow plaintiffs to amend their Complaint to more thoroughly articulate its allegations against the defendant.

Respectfully submitted,

LOPATIN & WITTENBERG


By:  /s/ Robert C. Domol
       ROBERT C. DOMOL P12854
       ALAN WITTENBERG P49788
       Attorneys for Plaintiffs
       3000 Town Center, Suite 1250
       Southfield, MI  48075
       (248) 353-1000

Dated:   July 27, 2015

14

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE KINSEY and SOPHIA BERNAL, a minor,
by her Next Friend, FERNANDO BERNAL,

      Plaintiffs,

                        Hon. District Judge Judith E. Levy
                        Magistrate Judge Elizabeth A. Stafford
                        Civil Action No. 15-cv-11752

SANDOZ, INC. and MEIJER, INC.,

      Defendants.

_____/

ROBERT C. DOMOL P12854
ALAN WITTENBERG P49788
Attorneys for Plaintiffs
3000 Town Center, Suite 1250
Southfield, MI 48075
(248) 353-1000

JILL M. WHEATON P49921
ALISON CARRUTHERS P77745
Attorneys for Defendants
2723 South State Street #400
Ann Arbor, MI 48104
(734) 214-7660

_____/

**PROOF OF SERVICE**

    I hereby certify that on July 27, 2015, I electronically filed the Plaintiffs' Answer to
Defendant Sandoz's Motion to Dismiss and Brief in Support, with the Odyssey E-File & Serve
E-Filing System, which will send such filing to all counsel of record.

/s/ Sandra L. Donald
Sandra L. Donald