UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Nicole Kinsey and Sophia Bernal,
a minor, by her next friend,
Fernando Bernal,

                Plaintiffs,

v.

Sandoz Inc. and Meijer, Inc.,

                Defendants.

_____/

Case No. 15-cv-11752
Hon. Judith E. Levy
Mag. Judge Elizabeth A. Stafford

**OPINION AND ORDER REMANDING THE CASE TO WAYNE COUNTY CIRCUIT COURT FOR LACK OF JURISDICTION**

Plaintiffs Nicole Kinsey and Sophia Bernal, mother and infant daughter, brought suit in Michigan state court alleging that defendant Sandoz Inc., which manufactured and packaged the allegedly defective oral contraceptive Introvale, and defendant Meijer, Inc., which distributed Introvale to plaintiff Kinsey, are liable for physical and financial harm to plaintiffs resulting from Kinsey's unwanted pregnancy. (*See* Dkt. 1-2.) Defendant Sandoz removed to this Court based on diversity, arguing that defendant Meijer, a non-diverse party,

was fraudulently joined, (see Dkt. 1), and each defendant filed a motion to dismiss. (*See* Dkt. 5; Dkt. 6.) For the reasons set forth below, the Court lacks subject-matter jurisdiction and the case is remanded to state court.

I. **Background**

For the purposes of this opinion and order, the following background is drawn from plaintiffs' complaint. (*See* Dkt. 1-2.)

In 2013, plaintiff Kinsey purchased Introvale, an oral contraceptive, which was manufactured and packaged by Sandoz and distributed by Meijer. (*Id*. at 3.) The drug was marketed as a thirteen week "blister package," containing one "blister card" for each week, in which weeks one through twelve were supposed to contain active tablets and week thirteen was supposed to contain inactive placebos. (*Id*.) But Sandoz incorrectly packaged the tablets, and the placebos were placed in the week nine blister card. (*Id*.) Sandoz had previously recalled Introvale for making the same mistake the year before. (*Id*. at 5.)

Kinsey, who was thirty-nine years old at the time, conceived plaintiff Bernal while she was taking Introvale. (*Id*. at 4.) Shortly thereafter, Kinsey received a letter from Meijer informing her that

there was a "Class 1 recall of th[e] medication," and the defect may cause an unwanted pregnancy. (*Id.*) She had already had four children, the last of whom was born twelve years previously, and she had been deemed a high-risk patient due to serious complications with each pregnancy. (*Id.*) As had happened before, serious complications resulted from Kinsey's pregnancy with Bernal. (*Id.*)

Kinsey was hospitalized in January 2014, out of concern that she might have a seizure, stroke, or heart attack due to the pregnancy. (*Id.* at 4-5.) Her doctor advised delivering the baby as soon as possible. (*Id.* at 5.) Bernal was delivered by emergency caesarean section on January 21, 2014, at twenty-four weeks, weighing one pound and five ounces. (*Id.*) Because of complications related to her premature birth, Bernal was in neo-natal intensive care for approximately six months, and she continues to suffer from medical issues. (*Id.*)

Plaintiffs bring two claims against defendants. First, plaintiffs claim that defendants are liable for negligence and gross negligence. (*Id.* at 6.) Specifically, plaintiffs claim that Sandoz breached its duty to manufacture and package Introvale in such a manner that was reasonably safe for its intended users and packaged appropriately,

3

Meijer breached its duty to distribute Introvale as approved by the Federal Drug Administration, and both breached their duty to notify Kinsey of the recall "in the most expedited manner possible." (*Id.* at 4-6.) Second, plaintiffs claim that defendants breached their express and implied warranty that Introvale was safe for its intended use, including but not limited to preventing unwanted pregnancies. (*Id.* at 8.)

Plaintiffs allege that they suffered and continue to suffer damages, including pain and suffering, mental anguish and emotional distress, hospital and medical bills, loss of income and impaired earning capacity, inability to enjoy leisure activities and other pursuits, future pain and disability, embarrassment and mortification, and loss of household services. (*Id.* at 7-9.)

**II. Standard**

"Courts must examine subject matter jurisdiction 'on their own initiative.'" *Probus v. Charter Commc'ns, LLC*, 234 F. App'x 404, 406 (6th Cir. 2007) (quoting *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583 (1999)). When a case is removed to federal court under 28 U.S.C. § 1441(b), complete diversity must have existed "both at the time the state action [wa]s commenced and at the time the defendant file[d] the

petition for removal." *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 908 (6th Cir. 1993). "When a non-diverse party has been joined as a defendant, then in the absence of a substantial federal question the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined." *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999) (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992)).

To establish fraudulent joinder, the removing defendant must demonstrate that the plaintiff lacks a "colorable cause of action" in the relevant state court against the non-diverse defendant. *See id.* "[T]he question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (quotations omitted). "[I]f there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants," the Court "must remand the action to state court." *Coyne ex rel. Ohio v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). "[A]ll disputed questions of fact and ambiguities in the controlling . . . state law" must be resolved "in

favor of the non[-]removing party." *Id.* (quoting *Alexander*, 13 F.3d at 949). So too regarding "[a]ll doubts as to the propriety of removal." *Id.*

The standard is "similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012); *see Feller v. Medical Protective Co.*, No. 13-cv-14193, 2014 U.S. Dist. LEXIS 13435, at *7 (E.D. Mich. Feb. 4, 2014) ("[T]he fraudulent joinder inquiry should be more deferential than even that given under Rule 12(b)(6)."). And when conducting a fraudulent-joinder inquiry, the Court may consider "material outside the pleadings for the limited purpose of determining whether there are 'undisputed facts that negate the claim.'" *Casias*, 695 F.3d at 433 (quoting *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 956 (6th Cir. 2011)).

## III. Analysis

Defendant Meijer argues that it cannot be held liable because it "is a mere seller that purchases the Introvale product from Sandoz already manufactured and packaged, and dispenses such product to patients without opening or inspecting the contents of each package." (*See* Dkt. 5 at 13.) But there are facts to show that Meijer actively

6

participated in Sandoz's recall effort. (*See, e.g.*, Dkt. 11-2 at 2.) And plaintiffs claim that Meijer breached its duty to notify Kinsey of the recall "in the most expedited manner possible." (*See* Dkt. 1-2 at 5.) Whether that claim is sufficiently pled is not the issue. Rather, the relevant issue here is whether plaintiffs state a *colorable* claim, which is a lower threshold.

Under Michigan law, non-manufacturing sellers are "not liable for harm allegedly caused by the product unless . . . [t]he seller failed to exercise reasonable care, including breach of any implied warranty, with respect to the product and that failure was a proximate cause of the person's injuries," or "[t]he seller made an express warranty as to the product, the product failed to conform to the warranty, and the failure to conform to the warranty was a proximate cause of the person's harm." Mich. Comp. Laws § 600.2947(6). Non-manufacturing sellers have "no duty to inspect a product unless the seller has reason to know that it is defective or the defect is readily ascertainable." *Konstantinov v. Findlay Ford Lincoln Mercury*, 619 F. Supp. 2d 326, 332 (E.D. Mich. 2008). And non-manufacturer sellers have no general "continuing duty to repair or recall a product." *Gregory v. Cincinnati*

7

*Inc.*, 538 N.W.2d 325, 326 (Mich. 1995); *see, e.g.*, *ESTATE OF Qing Kong v. A.J. MARSHALL CO.*, 590 N.W.2d 301, 302 (Mich. Ct. App. 1998) (no duty to recall the product because distributer took no affirmative action to assist in the recall effort).

Pharmacies, such as Meijer, are "generally not held liable for damages resulting from a correctly filled prescription." *Stebbins v. Concord Wrigley Drugs, Inc.*, 416 N.W.2d 381, 387 (Mich. Ct. App. 1987). For example, "a pharmacist has no duty to warn the patient of possible side effects of a prescribed medication where the prescription is proper on its face and neither the physician nor the manufacturer has required that any warning be given to the patient by the pharmacist." *See id.* at 387-88. And "there exists no legal duty on the part of a pharmacist to monitor and intervene with a customer's reliance on drugs prescribed by a licensed treating physician." *See Adkins v. Mong*, 425 N.W.2d 151, 154 (Mich. Ct. App. 1988). But "[o]nce a duty is voluntarily assumed, it must be performed with some degree of skill and care." *ESTATE OF Qing Kong*, 590 N.W.2d at 302. For example, a pharmacy "voluntarily assume[s] a duty of care when it implement[s]" a "computer system to monitor its customers['] medication profiles for

8

adverse drug interactions . . . . and then advertise[s] that this system would detect harmful drug interactions for its customers." *See Baker v. Arbor Drugs*, 544 N.W.2d 727, 731 (1996).

Here, the facts show that Meijer affirmatively assisted Sandoz with the recall. (At the hearing, defendants stated that Meijer attempted to call Kinsey on two occasions, in addition to sending the notice of recall by first-class mail.) There is thus a colorable claim that Meijer took on a duty of care in its recall efforts, which plaintiffs allege Meijer breached. *Cf. ESTATE OF Qing Kong*, 590 N.W.2d at 302. Whether Meijer actually had any such duty is not before the Court. And it is not clear whether Meijer undertook its efforts voluntarily or was obligated to do so by law or regulation. Sandoz, the removing party, had the "particularly heavy burden" to "prove fraudulent joinder." *Kent State Univ. Bd. of Trs. v. Lexington Ins. Co.*, 512 F. App'x 485, 489 (6th Cir. 2013). It failed to meet its burden.[1] Because plaintiffs have a colorable claim against Meijer, it was not fraudulently joined, and the Court lacks subject-matter jurisdiction.

---

[1] Meijer argues that "[p]laintiffs opted not to move to remand and thus do not appear to dispute that Meijer was improperly joined." (*See* Dkt. 12 at 2 n.1.) But "no plaintiff can 'create' diversity jurisdiction by failing to move to remand when it is clear that complete diversity does not exist." *Probus*, 234 F. App'x at 406.

9

## IV. Conclusion

For the reasons set forth above, this Court lacks subject-matter jurisdiction, and this case is remanded to state court.

IT IS SO ORDERED.

Dated: December 16, 2015  s/Judith E. Levy
Ann Arbor, Michigan  JUDITH E. LEVY
 United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 16, 2015.

 s/Felicia M. Moses
 FELICIA M. MOSES
 Case Manager